Stephen R. Jaffe
CA Bar No. 49539
The Jaffe Law Firm
1 Sansome Street
Suite 3500
San Francisco, CA 94104
Telephone: (415) 618-0100
Stephen.r.jaffe@jaffetriallaw.com

Eric H, Jaso (*pro hac vice* admission pending)
Spiro Harrison & Nelson
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH, <br><br> *Plaintiff-Relator,* <br><br> v. <br><br> METANOVA, LLC, f/k/a HAZENS INVESTMENT, LLC, and JIA YUAN USA CO., INC., <br><br> *Defendants*. | Civil Action No. 24-4277-MWF(MARx) <br><br> **Hon. Michael W. Fitzgerald, U.S.D.J.** <br><br> **FIRST AMENDED QUI TAM COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this First Amended Complaint in his *qui tam* action against Defendants Metanova, LLC, formerly known as Hazens Investment, LLC ("Hazens"), and Jia Yuan USA Co., Inc. ("Jia Yuan") (together, "Defendants"), and alleges as follows:

**INTRODUCTION**

1.  This is an action to recover treble damages, civil penalties and all other remedies on behalf of the United States of America in connection with the Defendants' materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.  Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

**SUMMARY OF ALLEGATIONS**

3.  The Small Business Administration ("SBA") prohibited from participation in the PPP loan program any business concern or entity for which an entity created in or organized under the laws of the People's Republic of China or Hong Kong, that had significant operations in the People's Republic of China, or that owned or held, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or any business concern or entity that retained, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

4.  At all times relevant to this action, Shenzhen Hazens Real Estate Group Co., Ltd. ("SHREG") was a real estate developer headquartered in Shenzhen, China.

5.  Defendants Hazens and Jia Yuan, along with non-defendant San Yi US Investment Company, Inc., were wholly-owned subsidiaries of SHREG.

6.  Both Defendants were majority-owned and controlled by Fuer Yuan, Chairman of SHREG and a citizen of the People's Republic of China. The following chart illustrates his ownership interests in Defendants' parent companies:



7. In or about 2013 through in or about 2015, through these U.S. subsidiaries, SHREG acquired three major hotels in the Los Angeles area, including the Luxe City Center Hotel, which it acquired through Jia Yuan. *See* C. Karmin, *Shenzhen Hazens Loves L.A. – Chinese Real-Estate Investor Goes Big Downtown*, Wall St. Journal, Aug. 5, 2014.

8. In or about October 2020, Jia Yuan entered into a non-prosecution agreement with the U.S. Department of Justice (Office of the U.S. Attorney, Central District of California) to resolve a federal investigation into allegations that executives, employees and agents of SHREG and Jia Yuan had engaged in a scheme to bribe and make illegal corporate and foreign campaign donations to U.S. politicians, including to bribe Jose Huizar, then a Los Angeles City Councilmember, for government approvals of the Luxe City Center Hotel project and other official acts.

9. As part of his cooperation with the investigation, Fuer Yuan submitted a sworn written statement, which included the following statement:

> I was born in the People's Republic of China in 1963 and have lived there my entire life. During all times mentioned in this statement, I have resided in Shenzhen, China. I am currently the Chairman of Jia Yuan USA, Co., Inc., the entity which owns the Luxe Hotel in downtown Los Angeles, California, and which is part of Hazens Real Estate Group.

10. Fuer Yuan was also a director of Legend Strategy International Holdings Group Company Limited, a Chinese public company. Its 2021 Annual Report included the following statement concerning "Directors' Interests in a Competing Business":

> Mr. Yuan Fuer, a non-executive Director of the Company, is the ultimate beneficial controlling shareholder and chairman of each of Shenzhen Hazens and Hazens. Shenzhen Hazens is principally engaged in property development and property management services businesses and holds interests in several hotels which are located in the United States of America and managed by multinational hotel management groups through its subsidiaries, and Hazens' business scope includes projects related to accommodation business.

11. Accordingly, in or about April 2020, SHREG, which owned more than 20 percent of Defendants, was "an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, . . . that ha[d] significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, own[ed] or h[e]ld[], directly or indirectly, not less than 20 percent of the economic interest of [Defendants], including as equity shares or a capital or profit interest in a limited liability company or partnership[.]

12. Further, Fuer Yuan was Chairman of Defendant Jia Yuan, which accordingly was an entity "[t]hat retain[ed], as a member of [its] board of directors . . . a person who is a resident of the People's Republic of China."

13. In or about April 2020, Hazens, Jia Yuan and San Yi submitted SBA applications for first-draw PPP loans, which were issued and subsequently forgiven.

14. In or about January and February 2021, Hazens and Jia Yuan submitted SBA applications for second-draw PPP loans, which were issued and subsequently forgiven.

15. The lender for these PPP loans was East West Bank ("EWB"), a Pasadena, California based federally insured financial institution founded in 1973 to serve the Chinese-

American immigrant population.  EWB is one of the few U.S. banks with a full banking license in the People's Republic of China and claims "decades of cross-border banking experience" between the U.S. and China. https://investor.eastwestbank.com/corporate-profile/default.aspx

16. The applications for the second-draw PPP loans required the applicants' authorized representatives to certify that neither Hazens nor Jia Yuan, nor their owner, were business entities created in or organized under the laws of the People's Republic of China, entities that had significant operations in the People's Republic of China, or that any such entity owned or held, directly or indirectly, 20 percent or more of the economic interest of Hazans or Jia Yuan, including as equity shares or a capital or profit interest in a limited liability company or partnership; or retained, as a member of the board of directors, a person who was a resident of the People's Republic of China.

17. In the applications for the second draw PPP loans, the authorized representatives of Hazens and Jia Yuan falsely stated and certified that neither Hazens nor Jia Yuan, nor their owner, were business entities created in or organized under the laws of the People's Republic of China, entities that had significant operations in the People's Republic of China, or that any such entity owned or held, directly or indirectly, 20 percent or more of the economic interest of Hazens or Jia Yuan, including as equity shares or a capital or profit interest in a limited liability company or partnership; and the authorized representative of Jia Yuan further falsely stated and certified that it did not retain, as a member of its board of directors, a person who was a resident of the People's Republic of China.  Defendants also expressly acknowledged that these were material questions, and that submitting a materially false application would violate federal law.

18. In reliance on these false statements and certifications, EWB extended second-draw PPP loans to Hazens and Jia Yuan totaling approximately $3.5 million.

19. In further reliance on these false statements and certifications, the lender forgave and/or charged off the PPP loans, the reimbursement for which cost the United States over $3.5 million.

- 4 -

US ex rel. Forsyth v. Metanova, LLC f/k/a Hazens Investment, LLC Amended Qui Tam Complaint
SHN\982690.1

20. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted and forgiven monies that were provided to Defendants as the result of its wrongdoing, as well as to recover treble damages and/or penalties.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

21. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

22. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a) because the Defendants have principal places of business and/or transact business in this District, and because the PPP Loan applications were prepared in, executed in, and/or submitted to a lender (which has a principal place of business and/or transacts business in this District) from this District.

23. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

24. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendants until the Court so orders.

25. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint. Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable E. Martin Estrada, United States Attorney for the Central District of California, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

26. Relator is not aware that the allegations in this Complaint have been publicly disclosed. Further, to the extent Relator is aware of any public disclosures, this Complaint is not

based on such public disclosures. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES/RELATED PERSONS AND ENTITIES

27. At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

28. At all times relevant to this action, Shenzhen Hazens Real Estate Group was a real estate developer headquartered in Shenzhen, China.

29. Fuer Yuan was the Chairman of SHREG, Chairman of Jia Yuan USA Co., Inc., a resident of Shenzhen, and a citizen of the People's Republic of China.

30. Defendant Metanova, LLC, formerly known as Hazens Investment, LLC, was a limited liability company organized in the State of California on or about June 26, 2013. Its principal place of business was located at 17800 Castleton Street, Suite 208, City of Industry, CA 91748.

31. Defendant Jia Yuan USA Co., Inc. was a limited liability company incorporated in the State of Delaware on or about May 16, 2014. Its principal place of business was located at 6101 West Century Blvd., Los Angeles, CA 90045.

32. San Yi US Investment Company, Inc. was incorporated in the State of Delaware (under the name Jia Jia US Investment Company, Inc.) on or about March 10, 2015. On or about March 19, 2015, it registered in California as a Foreign Corporation. Its principal place of business was located at 135 East Live Oak Ave., Arcadia, CA 91006. Fuer Yuan was its Chief Executive Officer and Teddy Yang was its Secretary.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

33. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover

losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

34. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $14,308.00 and up to $28,619.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(G), 20 CFR Part 356 and 28 CFR Part 85 (*see* 89 FR 106310, Dec. 30, 2024.

35. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

36. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

37. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

38. In this action, and under well-established precedent, the false and fraudulent nature of Defendant's conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

## The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants

39. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

40. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

41. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

42. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

43. The borrower's authorized representative must certify, among other things, the business's average monthly payroll expenses and number of employees. This information is used to calculate the amount of money the business is eligible to be loaned. The applicant must also submit documentation showing payroll expenses, among other things.

44. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

45. Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

46. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

47. To apply for a second PPP loan, known as a "second draw" loan, a borrower was required to prepare, certify and submit SBA Form 2483-SD.

48. Among other things, the applicant's authorized representative was required to certify that it was:

not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

49. The applicant's authorized representative was also required to acknowledge and certify:

that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

## SPECIFIC FRAUD ALLEGATIONS

### Hazens was a Subsidiary of SHREG, a China-based Company, at the Time it Applied for its Second-Draw PPP Loan

50. At all times relevant to this action, Hazens was a subsidiary of SHREG, a Chinese company, majority-owned and controlled by Yuan.

51. In or about April 2020, Hazens applied for and received its first PPP Loan, in the amount of $3,366,600.00. On or about March 21, 2022, that loan was forgiven.

52. In or about January 2021, Hazens applied for a second-draw PPP Loan.

53. Upon information and belief, an authorized representative of Hazens prepared an SBA Form 2483-SD, in which the representative falsely and fraudulently certified that neither Hazens nor its owner, were business entities created in or organized under the laws of the People's Republic of China, entities that had significant operations in the People's Republic of China, or that any such entity owned or held, directly or indirectly, 20 percent or more of the economic interest of Hazens, including as equity shares or a capital or profit interest in a limited liability company or partnership; or retained, as a member of the board of directors of Hazens, a person who was a resident of the People's Republic of China.

54. The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

55. The authorized representative executed, dated and submitted the Form 2483-SD to East West Bank ("EWB"), an SBA participating lender based in Los Angeles.

56. On or about January 30, 2021, in reliance on Hazens's materially false and fraudulent representations and certifications in the loan application, EWB issued second draw PPP loan #9326628305 in the amount of $2,000,000.00 (the "305 Loan").

57. On or about July 10, 2023, the 305 Loan was forgiven in full (in the amount of $2,049,000.00), causing the United States to reimburse EWB for the full amount of the loan proceeds plus interest, costs and fees.

**Jia Yuan was a Subsidiary of SHREG, a China-based Company, and Fuer Yuan was its Chairman, at the Time it Applied for its Second-Draw PPP Loan**

58. At all times relevant to this action, Jia Yuan was a subsidiary of SHREG, a Chinese company, majority-owned and controlled by Yuan. Yuan was also Chairman of Jia Yuan's Board of Directors.

59. In or about April 2020, Jia Yuan applied for and received its first PPP Loan, in the amount of $1,058,400.00. On or about August 11, 2021, that loan was forgiven.

60. In or about February 2021, Jia Yuan applied for a second-draw PPP Loan.

61. Upon information and belief, an authorized representative of Jia Yuan prepared an SBA Form 2483-SD, in which the representative falsely and fraudulently certified that neither Jia Yuan nor its owner, were business entities created in or organized under the laws of the People's Republic of China, entities that had significant operations in the People's Republic of China, or that any such entity owned or held, directly or indirectly, 20 percent or more of the economic interest of Jia Yuan, including as equity shares or a capital or profit interest in a limited liability company or partnership; or retained, as a member of the board of directors of Jia Yuan, a person who was a resident of the People's Republic of China.

62. The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

63. The authorized representative executed, dated and submitted the Form 2483-SD to EWB.

64. On or about February 12, 2021, in reliance on Jia Yuan's materially false and fraudulent representations and certifications in the loan application, EWB issued second-draw PPP loan #7651538405 in the amount of $1,481,872.00 (the "405 Loan").

65. Before on or about July 9, 2022, the 405 Loan was charged off, causing the United States to reimburse EWB for the full amount plus interest, costs and fees.

**THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANTS' CONDUCT**

66. Defendants' materially false statements have caused the Federal Government to be defrauded of taxpayer funds in the approximate amount of $3.5 million.

# CLAIMS FOR RELIEF

## COUNT I

False Claims Act:

Presenting or Causing to be Presented False and Fraudulent Claims

31 U.S.C. § 3729(a)(1)(A)

67. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

68. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

## COUNT II

False Claims Act:

Making or Using False

Records or Statement to Cause Claims to be Paid

31 U.S.C. § 3729(a)(1)(B)

69. Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

70. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendant – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

71.

**DEMANDS FOR RELIEF**

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against the Defendants, ordering that:

A. That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $14,308.00 and up to $28,619.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(G), 20 CFR Part 356 and 28 CFR Part 85 (*see* 89 FR 106310, Dec. 30, 2024, to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

## TRIAL BY JURY

Relator hereby demands a trial by jury as to all issues.

**THIS SPACE INTENTIONALLY LEFT BLANK**

DATE:   January __, 2026                     Respectfully submitted,

**THE JAFFE LAW FIRM**

By: _____

Stephen R. Jaffe
1 Sansome Street
Suite 3500
San Francisco, CA 94104
Telephone: (415) 618-0100
Stephen.r.jaffe@jaffetriallaw.com
*Attorneys for Plaintiff-Relator*

Eric H. Jaso (*pro hac vice* admission pending)
**SPIRO HARRISON & NELSON**
363 Bloomfield Avenue, Suite 2C
Montclair, NJ 07042
Telephone: (973) 232-0881
Facsimile: (973) 232-0887
ejaso@shnlegal.com

*Attorneys for Relator*